555 So.2d 1237 (1989)
Joseph SAVINO, Appellant,
v.
STATE of Florida, Appellee.
No. 87-0955.
District Court of Appeal of Florida, Fourth District.
November 8, 1989.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn, Asst. Atty. Gen., West Palm Beach, for appellee.
DELL, Judge.
Joseph Savino appeals from his conviction of third-degree murder. Appellant raises four points on appeal. He contends he did not waive his presence, or acquiesce to or ratify counsel's waiver of his presence during a witness's testimony or during the court's response to a jury question. Next, he contends the trial court erred *1238 when it failed to suppress the oral and recorded statements he gave to the police because he did not make a knowing and intelligent waiver of his Miranda rights. He also contends the trial court erred when it denied his request for a special instruction on insanity caused by the long and continued use of intoxicants. Finally, he contends the court erred when it refused to admit evidence that his wife admitted that she had killed her daughter several years earlier. We reverse and remand for a new trial.
Appellant's six-year-old stepson, Johnny Griffin, died from multiple injuries caused by blunt trauma to the abdomen. Appellant gave an oral statement at his home and a recorded statement at the police station. He stated that he had been drinking two and three days before the victim died, and that on several occasions during that time, he had hit the victim in the face and the stomach. Appellant moved to suppress the statements on the ground that he was too intoxicated or mentally disturbed to have knowingly and intelligently waived his Miranda rights. The trial court found that the police properly advised appellant of his rights, and that his intoxication or mental disturbance did not prevent him from making a knowing and intelligent waiver of his rights.
First, we hold the trial court did not err when it denied appellant's motion to suppress his statements. Appellant does not contend the police obtained his confession by use of coercion or other misconduct. He relies only upon evidence which he argues supports his claim of diminished mental capacity. The record contains sufficient evidence to support the trial court's conclusion that appellant freely, voluntarily, intelligently and knowingly waived his Miranda rights.
Next, the trial court permitted the state, after it had rested, to call a witness out of turn who identified the victim and testified that she baby-sat for the victim between 1983 and 1985. Appellant was not present in the courtroom during the witness's testimony. When appellant's counsel moved to strike the testimony, the prosecutor offered to repeat the questioning in appellant's presence, but his counsel waived his presence. On appeal, the state argues that appellant's counsel's waiver should be dispositive of this issue or that appellant's absence should be construed as harmless error. We disagree.
Notwithstanding counsel's waiver of appellant's presence, the record must demonstrate that appellant made a knowing, intelligent and voluntary waiver of his right to be present at essential stages of the trial. See Turner v. State, 530 So.2d 45 (Fla. 1987), cert. denied, ___ U.S. ___, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989). This record does not show that appellant's counsel advised him of his right to be present or that the court questioned appellant concerning his possible ratification of counsel's waiver. Although appellant remained silent when his counsel waived the state's offer to repeat the testimony of the witness, his silence cannot be construed as acquiescence or ratification of his counsel's action. See Francis v. State, 413 So.2d 1175 (Fla. 1982), cert. denied, 474 U.S. 1094, 106 S.Ct. 870, 88 L.Ed.2d 908 (1986). We find merit in appellant's argument that while the witness's testimony may not have been crucial to the outcome of the case, his absence during the testimony deprived him of his right to confront her and to confer with his counsel during cross examination. We cannot construe, as the state suggests, appellant's absence during the witness's testimony as harmless error.
Appellant's counsel again waived appellant's presence when the court answered a jury question on third degree murder. We reject the state's argument that appellant's absence during the court's answer of the jury's question should be held as harmless error because the jury asked only a legal question. The state misplaces its reliance on Meek v. State, 487 So.2d 1058 (Fla. 1986). We find nothing in this record which would permit us to conclude that counsel informed appellant of the jury's question or that appellant acquiesced to or ratified waiver by counsel of his presence during the court's response to the question. Therefore, we hold that appellant's *1239 absence from the courtroom constituted reversible error. See Smith v. State, 453 So.2d 505 (Fla. 4th DCA 1984), review denied, 462 So.2d 1107 (Fla. 1985).
We also hold that the trial court erred when it denied appellant's request for an instruction on the effect of the long and continued use of intoxicants. The appellant requested the court to instruct the jury that:
The law recognizes insanity superinduced by the long and continued use of intoxicants so as to produce a fixed and settled frenzy or insanity, either permanent or intermittent.
Florida Standard Jury Instruction 3.04(b), the general instruction on insanity directs a trial judge, when drugs or alcohol are involved, to the case of Cirack v. State, 201 So.2d 706 (Fla. 1967). In Cirack, the Supreme Court recognized that insanity could be superinduced by the long and continued use of intoxicants. Appellant presented sufficient expert testimony to support the reading of this instruction in conjunction with the trial court's general charge on insanity.
Finally, we hold that the trial court erred when it excluded evidence concerning appellant's wife's alleged admission that in 1978 she killed her daughter. The state made a motion in limine to prohibit appellant from presenting testimony concerning statements made by his wife, Carolyn Savino, that she had caused the death of her daughter. The trial court granted the motion, but stated that appellant's wife could take the stand and testify about the death of her daughter if she wished. When appellant called her as a witness, she invoked the Fifth Amendment and refused to testify. Appellant sought to present this evidence by a witness who would have testified that his wife had admitted the act and by a videotape deposition of the medical examiner who conducted the autopsy on the child. In the deposition, the medical examiner testified that the child died as the result of a skull fracture caused by a blunt instrument and that the trauma was consistent with child abuse.
Appellant argues that the trial court should have admitted the testimony as Williams Rule evidence. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Section 90.404(2), Florida Statutes (1987), codified the rule enunciated in Williams:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Appellant has not cited, nor have we found, a Florida case which has approved the admission of testimony similar to that offered by appellant as Williams Rule evidence.
In Diaz v. State, 409 So.2d 68 (Fla. 3d DCA 1982), the defendant sought to introduce evidence that another person committed a similar crime by similar methods to show that someone other than himself committed the crime charged. The court referred to the evidence as "reverse Williams Rule" evidence but concluded that the trial court did not abuse its discretion when it excluded the evidence because the similar crime lacked unique or distinctive features common to the crime charged. While the Diaz court did not reach the question of the admissibility of "reverse Williams Rule" evidence, it did cite to a number of out-of-state cases which have approved the admission of such evidence. We consider those cases instructive and analogous to the case sub judice. In State v. Garfole, 76 N.J. 445, 388 A.2d 587 (1978), the Supreme Court of New Jersey stated:
It is well established that a defendant may use similar other-crimes evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt of the crime charged against him.
Id. 388 A.2d at 591.
The court reversed the Appellate Division's affirmance of the trial court's exclusion of the defendant's proffer of similar other-crimes *1240 evidence. The Supreme Court reasoned:
It [the Appellate Division] required that "`the device used [in the prior crimes] * * * be so unusual and distinctive as to be like a signature'," citing authority applicable to efforts by the prosecutor to establish by other offenses by the defendant that all, including the charge being tried, were committed by the accused.
We are of the view, however, that a lower standard of degree of similarity of offenses may justly be required of a defendant using other-crimes evidence defensively than is exacted from the State when such evidence is used incriminatorily.
* * * * * *
[W]hen the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made. [Citations omitted].
Id. 388 A.2d at 590-91.
The courts in Colorado, Massachusetts and Minnesota, respectively, have similarly treated such "reverse Williams Rule" evidence. See People v. Flowers, 644 P.2d 916 (Colo.), appeal dismissed, 459 U.S. 803, 103 S.Ct. 25, 74 L.Ed.2d 41 (1982); Commonwealth v. Jewett, 392 Mass. 558, 467 N.E.2d 155 (1984); Commonwealth v. Murphy, 282 Mass. 593, 185 N.E. 486 (1933); State v. Bock, 229 Minn. 449, 39 N.W.2d 887 (1949).
Although the decision of a trial judge to admit or reject evidence of other crimes ordinarily will not be disturbed, that decision is not absolute and may be set aside if justice requires a different result.
Jewett, 467 N.E.2d at 158.
Notwithstanding the seven-year separation between the death of appellant's wife's daughter and the death of her son, the circumstances surrounding the two deaths and the evidence that the deaths resulted from similar injuries and under similar circumstances make the evidence concerning the earlier death relevant to appellant's guilt or innocence. Both children incurred multiple injuries consistent with blunt force trauma, and the trauma in both cases was consistent with child abuse. The record shows that appellant's wife had physically abused her son on several occasions and that she was living in the home with appellant and the victim when the allegedly fatal blows were struck. Accordingly, we hold that the trial court erred when it excluded this evidence from the jury. However, we recognize this question is one of first impression in Florida and one of great public importance. Therefore, we certify the following questions to the Florida Supreme Court:
MAY A DEFENDANT SHOW THAT SOMEONE OTHER THAN HIMSELF COMMITTED THE CRIME FOR WHICH HE IS CHARGED BY INTRODUCING EVIDENCE THAT ANOTHER PERSON WITH AN OPPORTUNITY TO COMMIT THE CRIME CHARGED, COMMITTED A SIMILAR CRIME BY SIMILAR METHODS. IF THE ANSWER TO THIS QUESTION IS IN THE AFFIRMATIVE, MAY THE TRIAL COURT APPLY A LESS STRICT STANDARD OF SIMILARITY TO THE ADMISSION OF SUCH EVIDENCE?
Accordingly, we reverse and remand this case for a new trial consistent with this opinion.
REVERSED and REMANDED for a new trial.
WALDEN and POLEN, JJ., concur.