DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**T.E.B.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D20-2699

[May 4, 2022]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Darren Steele, Judge; L.T. Case No. 432020CJ000154A.

Carey Haughwout, Public Defender, and Erika Follmer, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Sorraya M. Solages-Jones, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

### ***CORRECTED OPINION***

We sua sponte withdraw our previously issued opinion and substitute the following corrected opinion in its place.

T.E.B. ("appellant") appeals the order adjudicating him delinquent and sentencing him to a maximum-risk residential program for committing the offenses of attempted first-degree murder, two counts of felony battery, and robbery. Appellant raises four issues: (1) the trial court erred in excluding expert testimony relating to appellant's sickle cell disease and neurological functioning, which was relevant to the issue of premeditation; (2) the trial court erred in allowing expert testimony about how asphyxiation causes death; (3) there was insufficient evidence to establish felony battery; and (4) the trial court erred in departing from the Department of Juvenile Justice's recommendation. We find the second and fourth issues without merit and affirm without further comment. We also affirm the first issue because the trial court did not err in excluding the proffered testimony inasmuch as it related to diminished capacity. To

the extent the expert's proffer included testimony about sickle cell disease, it was not adequately preserved. Finally, we reverse the third issue and remand for the trial court to adjudicate appellant guilty of two counts of simple battery.

Appellant, age twelve, was a patient at a behavioral health hospital. On the day in question, appellant was agitated, pacing, and going into other patient's rooms. Two staff members attempted to block appellant. A struggled ensued, and appellant grabbed one of the staff member's security badges. Appellant punched the same staff member in the head multiple times while saying, "If you press charges bitch." Appellant put his hands around the staff member's neck and put her in a headlock. The staff member was unable to scream because she was being choked and could not breathe. Appellant told her, "I'm going to kill you, bitch."

The second staff member "called code" and unsuccessfully tried to intervene. Appellant wrapped his legs around the second staff member while maintaining his chokehold on the first staff member. He then grabbed the second staff member around the neck. At that point, a third staff member came and removed appellant.

After the incident, appellant said that he felt the first staff member shaking underneath him and it would have taken seconds for her to die if the second staff member had not interfered. Appellant asked where the first staff member went because he wanted her to come back so he could "finish." Photographs of the first staff member's injuries were introduced into evidence as well as surveillance videos of the incident.

Before trial, appellant sought to call a neuropsychologist, Dr. Joseph Sesta, to testify that appellant lacked the capacity to form specific intent due to sickle cell disease and mental illness. Appellant submitted an unsworn affidavit by Dr. Sesta stating that appellant's intelligence and overall neurocognitive ability fell below 2% compared to other juveniles his age. Dr. Sesta opined that appellant lacked the capacity to premeditate attempted first-degree murder due to his major neurocognitive disorder and associated neurological defects. Alternatively, appellant's actions resulted from an inability to regulate and control his behavior due to brain impairment, likely owing to his sickle cell disease.

Appellant also submitted a report completed by Dr. Sesta, which noted that children with sickle cell disease have a decrease in generalized brain functioning. Additionally, sickle cell disease can cause decreased oxygen to the brain resulting in neurobehavioral disfunction, although the report noted that testing would need to be done to determine whether this was

2

occurring in appellant. The report concluded that appellant's "capacity to conform his behavior to the standards of the law has been seriously impaired by his neurocognitive and neurobehavioral dysfunction, likely associated with Sickle Cell Disease, with possible contribution from comorbid psychiatric disorders."

The state moved in limine to prohibit appellant from introducing evidence of his mental state or diminished capacity to show lack of the intent to commit attempted murder, arguing that cognitive disorders and diminished capacity are not a legal defense. In support, the state relied on *Chestnut v. State*, 538 So. 2d 820 (Fla. 1989).

At the outset of the bench trial, the trial court granted the motion in limine, ruling:

> Florida is a binary state that does not provide for a defense of diminished capacity in any permutation other than a specifically pled defense of insanity.

> In the juvenile system the whole basis for a separate system rests in large part on the idea that juveniles inherently deal with diminished capacity and impulse issues and that those are to be addressed on an individual basis. This Court finds *Chestnut* to be controlling, cites to *Chestnut* and *Beckman*[1], therefore the State's Motion In Limine is granted.

The trial court prohibited the defense from introducing mental health evidence in its case-in-chief, but ruled such evidence would be admissible at disposition should appellant be found guilty.

In opening statements, the defense conceded the two counts of battery, as they were apparent on the surveillance video. Defense counsel further conceded that the two battery counts would constitute felony battery based on appellant's prior record, which included a prior battery committed when appellant was a juvenile. The state then introduced the prior withhold of adjudication for battery into evidence.

After trial, the trial court found appellant guilty of all counts. After a disposition hearing, wherein the trial court heard testimony from Dr. Sesta and the attempted murder victim, the trial court committed appellant to a maximum-risk residential program.

---

[1] *Beckman v. State*, 230 So. 3d 77 (Fla. 3d DCA 2017).

On appeal, appellant argues that the trial court erred in excluding evidence of his sickle cell disease and neurological functioning, which was relevant to the issue of premeditation.

"A trial court's ruling regarding the admissibility of expert testimony is reviewed on appeal for abuse of discretion." *Daniels v. State*, 312 So. 3d 926, 932 (Fla. 4th DCA 2021).

"Our precedent has firmly established the inadmissibility of evidence relating to mental capacity absent an insanity plea." *Nelson v. State*, 43 So. 3d 20, 30 (Fla. 2010) (finding evidence of schizoaffective disorder inadmissible); *see also State v. Bias*, 653 So. 2d 380, 382 (Fla. 1995) ("[E]xpert evidence of diminished capacity is inadmissible on the issue of *mens rea*."). As the supreme court has explained:

> It could be said that many, if not most, crimes are committed by persons with mental aberrations. If such mental deficiencies are sufficient to meet the definition of insanity, these persons should be acquitted on that ground and treated for their disease. Persons with less serious mental deficiencies should be held accountable for their crimes just as everyone else. If mitigation is appropriate, it may be accomplished through sentencing, but to adopt a rule which creates an opportunity for such persons to obtain immediate freedom to prey on the public once again is unwise.

*Chestnut*, 538 So. 2d at 825.

The rationale for the exclusion of evidence of diminished capacity is that it "is too potentially misleading to be permitted routinely in the guilt phase of criminal trials." *Bunney v. State*, 603 So. 2d 1270, 1273 (Fla. 1992); *see also Dillbeck v. State*, 643 So. 2d 1027, 1029 (Fla. 1994) ("[E]vidence of most mental conditions is simply too misleading to be allowed in the guilt phase."). The supreme court has carved a narrow exception to this rule and stated that "evidence of certain commonly understood conditions that are beyond one's control," such as "medication, epilepsy, infancy, or senility" is not too potentially misleading and "should also be admissible." *Bunney*, 603 So. 2d at 1273. In *Bunney*, the supreme court found that evidence the defendant committed the crime during the course of a minor epileptic seizure was admissible. *Id.* However, the supreme court found that the trial court properly excluded other evidence "relating to a general mental impairment or other esoteric condition." *Id.* at 1273 n.1.

4

We find the trial court did not err in granting the motion in limine because evidence of diminished capacity is inadmissible. We further find that appellant failed to preserve a claim regarding the admissibility of his sickle cell disease. Appellant proffered the testimony he sought to admit by submitting a filing to the court and attaching an unsworn affidavit and a report from Dr. Sesta. However, the substance of these documents showed that appellant sought to admit evidence of *both* his sickle cell disease *and* mental illness. It is clear that evidence of mental illness constitutes diminished mental capacity and thus is inadmissible. *Chestnut*, 538 So. 2d at 824. At no point did appellant seek to introduce evidence of sickle cell disease alone. *See Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985) ("In order to be preserved for further review by a higher court . . . the specific legal argument . . . to be argued on appeal or review must be part of that presentation if it is to be considered preserved.").

Nor did appellant secure a ruling on the admissibility of evidence of sickle cell disease in and of itself. Rather, the trial court limited the scope of its ruling to diminished capacity, specifically stating that diminished capacity is not admissible under *Chestnut*. The trial court did not make a specific reference to sickle cell disease, nor did appellant request a separate ruling on the admissibility of sickle cell disease. *See Carratelli v. State*, 832 So. 2d 850, 856 (Fla. 4th DCA 2002) ("[A] party must obtain a ruling from the trial court in order to preserve an issue for appellate review."). Therefore, by failing to argue and obtain a ruling based solely on sickle cell disease, appellant failed to preserve this issue for appeal.

Appellant also argues there was insufficient evidence to establish felony battery and that defense counsel was ineffective for conceding that the battery counts could be enhanced to felony battery. The state agrees that if this court finds ineffective assistance, it should reverse and remand for entry of simple battery.

In *Steiger v. State*, 328 So. 3d 926, 929 (Fla. 2021), the supreme court held that a claim of ineffective assistance of counsel cannot be raised on direct appeal absent a showing of fundamental error. Fundamental error is error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960). "[F]or an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process." *State v. Johnson*, 616 So. 2d 1, 3 (Fla. 1993).

Battery is a first-degree misdemeanor.  § 784.03(1)(b), Fla. Stat. (2020). However, a prior battery conviction causes a subsequent battery conviction to be reclassified as a third-degree felony.  § 784.03(2), Fla. Stat. (2020).  "For purposes of this subsection, 'conviction' means a determination of guilt that is the result of a plea or a trial, regardless of whether adjudication is withheld or a plea of nolo contendere is entered." *Id.*  However, and significant to this issue, for purposes of juvenile delinquency proceedings, an adjudication of delinquency is not deemed a conviction:

> Except as the term "conviction" is used in chapter 322 [driver's licenses], and except for use in a subsequent proceeding under this chapter [juvenile delinquency proceedings], an adjudication of delinquency by a court with respect to any child who has committed a delinquent act or violation of law shall not be deemed a conviction . . . .

§ 985.35(6), Fla. Stat. (2020).

In *W.J.H. v. State*, 922 So. 2d 458, 459 (Fla. 4th DCA 2006), this court considered "whether a withhold of adjudication entered in juvenile delinquency proceedings initiated under chapter 985, Florida Statutes, may provide the predicate prior battery 'conviction' necessary to sustain a conviction for felony battery, pursuant to section 784.03(2), Florida Statutes, in subsequent delinquency proceedings."  We held that "a withheld adjudication for simple battery in juvenile court may not be used as a predicate offense to elevate misdemeanor battery to felony battery." *Id.* (citing *J.E.A. v. State*, 842 So. 2d 851 (Fla. 2d DCA 2002)).  Accordingly, this court reversed the felony battery disposition and remanded with instructions that the trial court enter a new disposition order for simple battery.  *Id.* at 459-60.

The court in *Anderson v. State*, 323 So. 3d 833, 838 (Fla. 2d DCA 2021), found that trial counsel was ineffective for failing to object to the sufficiency of the state's evidence of prior convictions for driving while license suspended or revoked, which served as a predicate for convicting the defendant of a felony.  There was no plausible justification or strategic reason for trial counsel's decision not to challenge the sufficiency of the state's evidence of the defendant's prior convictions, and it was clear the defendant suffered prejudice as he was exposed to a conviction of a third-degree felony rather than a second-degree misdemeanor.  *Id.*

Like in *W.J.H.*, appellant's prior juvenile withhold of adjudication for battery could not serve as a predicate prior conviction for felony battery

since the prior delinquency could not "be deemed a conviction." Like in *Anderson*, there was no plausible justification or strategic reason for trial counsel to agree that the withhold of adjudication for battery served as a predicate for felony battery, and appellant clearly suffered prejudice as he was adjudicated guilty of two counts of felony battery rather than two counts of simple battery. We conclude that, in this case, it was fundamental error to convict of a greater crime where there was no proof of underlying elements. *See F.B. v. State*, 852 So. 2d 226, 230 (Fla. 2003) ("[A]n argument that the evidence is totally insufficient as a matter of law to establish the commission of a crime need not be preserved.").

In summary, we reverse and remand the two felony battery adjudications with instructions for the trial court to adjudicate appellant guilty of two counts of simple battery. We also affirm the convictions for attempted murder and robbery.

*Affirmed in part, reversed in part, and remanded with instructions.*

WARNER and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

7